UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JENNIFER PICHE *et al.*,

                    Plaintiffs,

            -v-                                    9:24-CV-22 (AJB/TWD)

COUNTY OF JEFFERSON *et al.*,

                    Defendants.

_____

**Hon. Anthony Brindisi, U.S. District Judge:**

<u>**DECISION and ORDER**</u>

## I.    INTRODUCTION

On November 22, 2023, plaintiff Jennifer Piche ("Piche"), a person with disabilities, filed this civil rights action in Supreme Court, Jefferson County alleging that defendants subjected her to serious abuse and medical neglect while she was detained at the Jefferson County Correctional Facility ("JCCF"). Defendants jointly removed the action to federal court, where it was initially assigned to U.S. District Judge Glenn T. Suddaby. *See* Dkt. No. 1.

On January 17, 2024, Piche amended her complaint, adding parties—including Disability Rights New York ("DRNY")[1] as a plaintiff—and clarifying her claims. Dkt. No. 10. Piche also moved for leave to proceed under a pseudonym. Dkt. No. 11. After defendants answered, Dkt. Nos. 28, 29, the motion for leave to proceed pseudonymously was referred to U.S. Magistrate

_____

[1] DRNY is New York's designated Protection and Advocacy ("P&A") System. P&A Systems are authorized by federal law to "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights" of disabled individuals. 42 U.S.C. § 15043(a)(2)(A)(i). The operative complaint alleges that DRNY has "representational standing" as a plaintiff to pursue this litigation on behalf of the disabled individuals who are incarcerated at JCCF, Second Am. Compl. ¶ 62, but Second Circuit precedent suggests a more robust showing may be required, *A.H. ex rel. E.H. v. N.Y. State Dep't of Health*, 147 F.4th 270, 279 (2d Cir. 2025).

Judge Thérèse Wiley Dancks, Dkt. No. 30, who denied plaintiffs' request on September 9, 2024. Dkt. No. 63. Thereafter, defendants moved to dismiss, Dkt. No. 58, and Piche and DRNY cross-moved for leave file their Second Amended Complaint, Dkt. No. 84. Judge Suddaby denied the cross-motion but left defendants' motion to dismiss pending. Dkt. No. 95.

On January 24, 2025, the matter was reassigned to this Court. Dkt. No. 96. Piche and DRNY moved for reconsideration of Judge Suddaby's Order denying leave to file a Second Amended Complaint. Dkt. No. 97. This Court granted reconsideration, directed Piche and DRNY to file their proposed Second Amended Complaint, and denied defendants' motion to dismiss as moot. Dkt. No. 100.

The Second Amended Complaint names DRNY, Piche, Anna Doe ("A.D."), Mary Doe ("M.D."), and Sally Doe ("S.D.") as plaintiffs and identifies a long list of defendants involved in the operation of JCCF: the County of Jefferson, the County Sheriff, twenty-two JCCF officers and sergeants, and two PrimeCare Medical entities. Dkt. No. 105. Broadly speaking, the pleading alleges that defendants' conduct and policies have violated the federal and state constitutions, Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). *See id*. Defendants have answered. Dkt. Nos. 113, 114.

On May 15, 2025, plaintiffs moved for leave to proceed under a pseudonym as to the new named plaintiffs A.D., M.D., and S.D. (collectively the "Does"). Dkt. No. 103. That motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND

The Does have submitted affidavits in support of their motion. The affidavits have been reviewed and will be briefly summarized. Although the Court has also considered the relevant

factual allegations set forth in the Second Amended Complaint, familiarity with that document is assumed for purposes of this motion practice.

S.D., M.D., and A.D. are individuals with serious mental illnesses and disabilities who suffered abuse, neglect, and trauma at JCCF. Paris Aff., Dkt. No. 103-2 ¶ 7. DRNY initially identified the Does as witnesses to this case who were unwilling to "come forward with their own claims because they were incarcerated at the time and feared retaliation and further harm" from defendants. *Id.* ¶ 8. The Does have since been released or transferred from JCCF. *Id.* ¶ 9.

S.D. is a person with multiple disabilities. S.D. Aff., Dkt. No. 103-3 ¶ 2. She was held at JCCF from October 31, 2023, to December 27, 2023. *Id.* ¶ 1. During her incarceration, she was subjected "to a lot of verbal, emotional, and psychological abuse, neglect, harassment, and trauma." *Id.* ¶ 3. Among other things, JCCF staff "engaged in cruel behavior" that "humiliated, intimidated, and destabilized" her. *Id.* ¶ 5. JCCF refused to allow her regular outdoor recreation time, which exacerbated her physical and mental symptoms. *Id.* ¶ 8. At one point, JCCF staff put S.D. in segregated confinement for sharing a sip of milk with another inmate. *Id.* ¶ 11. This punishment caused her "extreme emotional distress." *Id.* ¶ 12. S.D. lives in Black River, but it is still near JCCF and she routinely encounters JCCF officers in public. *Id.* ¶ 19. She feels fear and embarrassment and worries that these officers and others in her community will learn of her involvement in this civil action. *Id.* ¶¶ 16–19, 21. Further, as a survivor of domestic violence, S.D. fears that her abuser might locate her name in a publicly filed database. *Id.* ¶ 20.

M.D. is a person with multiple disabilities. M.D. Aff., Dkt. No. 103-4 ¶ 2. She was held at JCCF from April 4, 2023, to January 2, 2024. *Id.* ¶ 1. M.D. suffered from abuse, neglect, and trauma from JCCF staff. *Id.* ¶ 3. During her incarceration, M.D. reported this abuse to a DRNY representative during a monitoring visit. *Id.* ¶¶ 4–5. JCCF staff retaliated against her, subjecting

M.D. to more verbal and physical abuse that aggravated her underlying mental health conditions and caused her to experience suicidal ideation.  *Id*. ¶ 6.  M.D.'s experience at JCCF caused her to suffer extreme psychological damage.  *Id*. ¶ 11.  She fears retaliation from the JCCF staff and the officers at the State facility where she is currently being held.  *Id*. ¶ 13.  M.D. has always lived in Watertown and plans to return there upon her release.  *Id*. ¶ 14.  M.D. worries about her ability to get a job or participate in community events without fear of stigma, shame, and retaliation from the other members of her community.  *Id*.

A.D. is a person with multiple disabilities.  A.D. Aff., Dkt. No. 103-5 ¶ 1.  She was held at JCCF from January 16, 2024, to March 13, 2024.  *Id*.  A.D. was pregnant during this period of incarceration, and she too suffered from severe abuse, neglect, and trauma from JCCF staff.  *Id*. ¶ 2.  Among other things, A.D. was denied clean clothing, deprived of food, subjected to physical and verbal assaults, and "repeatedly forced to strip naked, pepper-sprayed, and humiliated, and witnessed naked in front of male officers, without just cause."  *Id*. ¶ 4.  This abuse exacerbated A.D.'s mental health symptoms.  *Id*. ¶ 6.  She still fears retaliation from the JCCF staff and the officers at the State facility where she is currently being held.  *Id*. ¶ 9.  A.D. has always lived in Watertown and plans to return there upon her release.  *Id*. ¶ 10.  A.D. worries about her ability to get a job or participate in community events without fear of stigma, shame, or retaliation from the other members of her community.  *Id*.  Further, as a survivor of domestic violence, A.D. fears that her abuser might locate her mother and infant daughter.  *Id*. ¶ 12.

## III.    LEGAL STANDARD

Generally speaking, a civil action "must be prosecuted in the name of the real party in interest."  FED. R. CIV. P. 17(a)(1); *see also* FED. R. CIV. P. 10(a) ("The title of the complaint must name all the parties.").  "This requirement, though seemingly pedestrian, serves the vital

purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 224 (S.D.N.Y. 2015).

As the Second Circuit has explained, "[i]dentifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)). "Indeed, this right is supported by the First Amendment." *Doe v. Weinstein*, 484 F. Supp. 3d 90, 93 (S.D.N.Y. 2020) (cleaned up).

Nevertheless, in certain "extraordinary" circumstances, *Corpac v. Rubin & Rothman, LLC*, 10 F. Supp. 3d 349, 351 (E.D.N.Y. 2013), especially those that implicate serious individual privacy concerns, *Doe v. City of N.Y.*, 201 F.R.D. 100, 101 (S.D.N.Y. 2001), a court may, in its discretion, "permit a litigant to proceed anonymously." *Doe ex rel. Doe No. 1 v. Nygard*, 2020 WL 4890427, at *1 (S.D.N.Y. Aug. 20, 2020).

In *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), the Second Circuit set out a non-exhaustive list of ten factors used to help analyze this sensitive and difficult issue, which requires "the plaintiff's interest in anonymity [ ] be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id.* at 189. To strike the proper balance, the Second Circuit has directed district courts to consider:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his or her age; (5) whether the suit is challenging the actions of the government or that of private

parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his or her claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his or her identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 190 (cleaned up).

"Although the ten *Sealed Plaintiff* factors are highly instructive, courts are not required to consider any or all of them, nor must they use any particular approach, so long as they balance the relevant interests at stake when reaching a conclusion." *Nygard*, 2020 WL 4890427 at *2. "However, the bar to proceed in Court anonymously is high." *Doe v. Delta Air Lines, Inc.*, 2023 WL 7000939, at *2 (E.D.N.Y. Sept. 7, 2023).

## IV.    DISCUSSION

The first *Sealed Plaintiff* factor considers "whether the litigation involves matters that are highly sensitive and of a personal nature." 537 F.3d at 190. According to plaintiffs, the Does have satisfied this factor because their medical and mental health conditions will be integral to the case. *See* Pls.' Mem., Dkt. No. 103 at 12–14.

The Court agrees. *See, e.g.*, *P.D. by H.D. v. Neifeld*, 2022 WL 818895, at *2 (E.D.N.Y. Mar. 1, 2022) (finding same). However, this factor alone is not enough to grant a party's request for anonymity, because "plaintiffs frequently proceed under their own names regarding matters that are personal, sensitive, and involve medical records." *See, e.g.*, *Doe v. Cornell Univ.*, 2021 WL 6128738, at *4 (N.D.N.Y. Jan. 28, 2021) (collecting cases). For example, the Does' medical

privacy could still be shielded, in part, by confidentiality orders (such as the one at Dkt. No. 54) and by filing any medical records in redacted fashion or, if warranted, under seal.

The second and third *Sealed Plaintiff* factors consider whether identification poses risks of retaliatory, mental, or other harms to the movant or, "even more critically, to innocent non-parties." 537 F.3d at 190. According to plaintiffs, the Does can "easily satisfy" these factors because disclosure of their names, personal information, and health histories "puts them at risk of additional injury, beyond the harm they have already experienced." Pls.' Mem. at 14–17.

This is a closer call. The risk of physical or psychological injury can certainly serve as a legitimate basis for anonymity. *See Doe v. Townes*, 2020 WL 2395159, at \*4 (S.D.N.Y. May 12, 2020). But in the absence of "evidence of actual physical harm, courts have found that evidence of embarrassment, social stigmatization, and economic harm provides an insufficient basis for proceeding anonymously." *Doe v. Cornell Univ.*, 2021 WL 6128738, at \*5 (collecting cases).

The Court is not unsympathetic to the Does' concerns about the social stigma or possible retaliation they might face in their communities. In particular, the Court credits M.D. and A.D.'s fear of possible retaliation from the State officials in the facilities where they are currently being held and acknowledges that S.D. and A.D. are domestic abuse survivors.

Without discounting the Does' subjective fears, these generalized claims of possible harm are insufficient to weigh in favor of pseudonymity. *See, e.g.*, *Doe v. Black Diamond Cap. Mgmt. LLC*, 2023 WL 2648017, at \*4 (S.D.N.Y. Mar. 27, 2023) ("Even where plaintiffs have presented affidavits, courts frequently reject claims of psychological harm and career damages where the affidavits are vague or speculative."); *Henderson v. Popp*, 2022 WL 2302145, at \*5 (N.D.N.Y. June 27, 2022) (finding concern "largely, if not entirely, alleviated by the fact that [plaintiff] is no longer incarcerated at the facility where the named defendants are employed").

The fourth *Sealed Plaintiff* factor asks whether the Does might be particularly vulnerable to possible harms from disclosure in light of their age. 537 F.3d at 190. They are not. The Does are adults who have purposefully availed themselves of the courts by filing this suit. Courts routinely find that this factor weighs against pseudonymity, even where the litigant might be an individual with a disability. *See Chestnut Hill NY, Inc. v. City of Kingston*, 2023 WL 8108645, at *4 (N.D.N.Y. Nov. 21, 2023) (finding same even where plaintiffs were disabled adults).

The fifth *Sealed Plaintiff* factor asks "whether the suit is challenging the actions of the government or that or private parties." 537 F.3d at 190. The Does are challenging the conduct and policies of JCCF staff, who are municipal government employees. Accordingly, this factor weighs in favor of the grant of pseudonymity. *See, e.g.*, *Plaintiffs # 1-21 v. County of Suffolk*, 138 F. Supp. 3d 264, 274 (E.D.N.Y. 2015) (collecting cases).

The sixth *Sealed Plaintiff* factor considers whether "defendant is prejudiced by allowing the plaintiff to press his or her claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court." 537 F.3d at 190. In denying a previous motion to proceed under a pseudonym as to Piche, Judge Dancks concluded that this factor was neutral because, at that time, "there [was] only one individual plaintiff and, as such, investigating Plaintiff Doe's various allegations should not be more burdensome if she proceeds by pseudonym." Dkt. No. 63 at 6–7.

This factor remains neutral at best. Although plaintiffs point out that defendants already know the Does' identities (discussed below), the grant of pseudonymity is still likely to hamper discovery at least to some degree. *See, e.g.*, *Doe v. Freydin*, 2021 WL 4991731, at *3 (S.D.N.Y. Oct. 27, 2021). However, the marginal difference between one pseudonymous plaintiff and three

pseudonymous plaintiffs, all of whom challenge roughly the same policies and conduct, leads to the conclusion that, as Judge Dancks previously noted, this factor is a "neutral" one.

The seventh *Sealed Plaintiff* factor considers whether the Does' identities have been kept confidential so far. 537 F.3d at 190. They have not. As the Jefferson County defendants explain, the identities of the Does were disclosed in connection with show-cause orders filed in state court. Dkt. No. 110-2 at 12. Plaintiffs' motion acknowledges this fact but emphasizes that this was through no fault of the Does—they only revealed their identities because the state-court procedures required them to do so in order to seek pseudonymity in the first place. Pls.' Mem. at 18. In any event, Judge Dancks previously concluded that this factor weighed in favor of pseudonymity and the Court easily determines that the same is true here.

The eighth and ninth *Sealed Plaintiff* factors address the public interests at stake. 537 F.3d at 190. After considering the matter, the Court concludes that these factors weigh against relief. "[L]awsuits are public events and the public has a legitimate interest in the facts involved in them. Among those facts is the identity of the parties." *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) (citation omitted). This is a case that challenges "particular actions and incidents," which makes it the kind of civil litigation that generally favors open proceedings. *See, e.g.*, *Doe v. Weinstein*, 484 F. Supp. 3d 90, 98 (S.D.N.Y. 2020) (distinguishing between abstract legal challenges and suits involving particular incidents).

Finally, the tenth *Sealed Plaintiff* factor evaluates whether alternative mechanisms could protect the Does' legitimate interests in confidentiality. 537 F.3d at 190. They could. For instance, the redaction of sensitive information (medical or otherwise) and the use of protective orders appears likely to mitigate many of the concerns identified by the Does. *See, e.g.*, *Weinstein*, 484 F. Supp. 3d at 98 (concluding that "blanket anonymity" is typically unnecessary).

## V.    CONCLUSION

Upon consideration of the factors set forth in *Sealed Plaintiff*, the Court concludes that plaintiffs' motion must be denied because the Does' privacy interests, although substantial, are insufficient under the circumstances to outweigh "the customary and constitutionally-embedded presumption of openness in judicial proceedings."  *Sealed Plaintiff*, 537 F.3d at 189 (cleaned up).

Therefore, it is

ORDERED that

1.  Plaintiffs' motion to proceed via pseudonym (Dkt. No. 103) is DENIED.

2.  Plaintiffs are directed to file the current operative Second Amended Complaint, Dkt. No. 105, in Anna Doe's, Mary Doe's, and Sally Doe's, own name on or before November 14, 2025.

IT IS SO ORDERED.


Dated: October 24, 2025
       Utica, New York

Anthony J. Brindisi
U.S. District Judge